UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN BOWMAN,

                Plaintiff,

   v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

                Defendant.

Case No. C13-1346-BAT

**ORDER AFFIRMING THE COMMISSIONER**

Plaintiff Steven Bowman seeks review of the denial of his application for Disability Insurance Benefits. He contends the ALJ erred in (1) finding that anxiety and obesity were not severe impairments at step two; (2) discounting his credibility; (3) assessing the opinion of treating physician Stanley Borish, M.D.; and (4) applying Medical-Vocational Rule 202.11 to find him not disabled. Dkt. 16 at 2. As discussed below, the Commissioner's decision is **AFFIRMED** and the case is **DISMISSED** with prejudice.

## BACKGROUND

Mr. Bowman is currently 55 years old, has an 11th grade education with some additional vocational training, and has worked as a truck driver and motorcycle mechanic.[1] On March 29,

---

[1] Tr. 53, 158, 168.

ORDER AFFIRMING THE COMMISSIONER - 1

2011, he applied for benefits, alleging disability as of October 12, 2010.[2]  Tr. 133-34.  His application was denied initially and on reconsideration.  Tr. 82-88, 90-91.  The ALJ conducted a hearing on June 4, 2012 (Tr. 39-49), subsequently finding Mr. Bowman not disabled.  Tr. 17-33.  As the Appeals Council denied Mr. Bowman's request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 1-6.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[3] the ALJ found:

**Step one:**  Mr. Bowman had not engaged in substantial gainful activity since January 31, 2011, the amended alleged onset date.

**Step two:**  Mr. Bowman's degenerative disc disease, recurrent arrhythmias, essential hypertension, and other disorders of the vestibular system were severe.

**Step three:**  These impairments did not meet or equal the requirements of a listed impairment.[4]

**Residual Functional Capacity ("RFC"):**  Mr. Bowman can perform essentially a full range of light work, with the following additional limitations: he can occasionally lift 20 pounds and frequently lift 10 pounds; he can stand or walk for about six hours in an eight-hour workday and sit for six hours in an eight-hour workday; he can occasionally climb ramps, stairs, ropes, and scaffolds; he can occasionally stoop, kneel, or crouch, and frequently balance or crawl; he should avoid concentrated exposure to extreme cold or heat, humidity, vibrations, hazards, fumes, odors, dusts, gases, or poor ventilation.

**Step four:**  Mr. Bowman cannot perform his past work.

**Step five:**  Applying Medical-Vocational Rule 202.11, Mr. Bowman is not disabled.

Tr. 17-33.

//

//

---

[2] At the administrative hearing, Mr. Bowman amended his alleged onset date to January 31, 2011.  Tr. 44.
[3] 20 C.F.R. §§ 404.1520, 416.920.
[4] 20 C.F.R. Part 404, Subpart P, Appendix 1.

**DISCUSSION**

**I.      Step Two**

Mr. Bowman argues that the ALJ erred in finding that his anxiety disorder was medically determinable but not severe at step two, and in not considering his obesity at step two or any later stage in the decision.

**A.      Anxiety**

The ALJ analyzed the "paragraph B" criteria to determine that Mr. Bowman's anxiety was not severe, because it caused no more than mild limitations in all of the functional areas and no episodes of decompensation of extended duration. Tr. 21. Mr. Bowman argues that the ALJ's analysis was flawed because he has more than mild limitations as to daily activities caused by his driving-related anxiety, and because his physical pain limits his ability to complete daily activities, which suggests that his conditions in combination cause more than a mild limitation as to daily activities. Dkt. 16 at 5-6.

The Court disagrees with Mr. Bowman's arguments for a number of reasons. First, the ALJ's finding that Mr. Bowman's anxiety caused only a mild limitation in his daily activities is a reasonable conclusion supported by substantial evidence in the record. Mr. Bowman did not receive any mental health counseling, and reported that his medication helped his anxiety. Tr. 372. He also reported to a consultative examiner that his anxiety makes driving large vehicles (when he was a truck driver) difficult, but that his anxiety is not significant when he drives smaller vehicles. *Id*. Mr. Bowman drove himself to his consultative examination and reported no problems doing so. *Id*. The ALJ reasonably concluded that Mr. Bowman's anxiety caused by driving large vehicles caused only a mild limitation in his overall daily activities. Tr. 21 (citing Tr. 74, 374-75).

Furthermore, to the extent that Mr. Bowman argues that the ALJ should have considered the effect of all his impairments (including physical limitations) on his ability to complete daily activities, he does not explain how this analysis would have been relevant to a step-two determination whether his anxiety was a severe impairment. The ALJ did consider Mr. Bowman's impairments in combination at step three (Tr. 22), yet the "paragraph B" criteria (which include an evaluation of a claimant's limitations on daily activities) are relevant to mental impairments only. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.01. Whether Mr. Bowman's degenerative disc disease, for example, causes limitations in daily activities is not relevant to whether he meets Listing 1.04. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

Accordingly, Mr. Bowman has not identified an error in the ALJ's reasoning as to the severity of his anxiety.

**B.     Obesity**

Mr. Bowman correctly notes that the record contains evidence showing that he is obese, based on a calculation of his body mass index. *See* Tr. 517. No provider diagnosed[5] Mr. Bowman with obesity, or indicated that his obesity caused any particular limitations. Thus, Mr. Bowman's suggestion that the ALJ should have assessed the effects of his obesity relies on a speculative assumption that his obesity causes an effect on his ability to perform work activities. An ALJ is not required to so speculate. *See* Social Security Ruling 02-1p, 2002 WL 34686281, at *6 (Sept. 12, 2002) ("[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity of functional limitations of the other impairment. We will

---

[5] Mr. Bowman notes that Dr. Borish's treatment notes include a body mass index table, which appears to show that Mr. Bowman's height/weight measurements leave him in the "obese" category, but Dr. Borish did not include obesity as a diagnosis in his notes. Tr. 383.

ORDER AFFIRMING THE COMMISSIONER - 4

1  evaluate each case based on the information in the case record.").

2      *Burch v. Barnhart* does not establish that the ALJ's failure to mention obesity was error,

3  because that issue was assumed without deciding in *Burch*. 400 F.3d 676, 682 (9th Cir. 2005).

4  Furthermore, the *Burch* court held that even if the ALJ should have assessed the effects of the

5  claimant's obesity, the claimant had "not pointed to any evidence of functional limitations due to

6  obesity which would have impacted the ALJ's analysis," and thus any error was harmless. 400

7  F.3d at 683. Likewise, in this case, because there is no evidence that Mr. Bowman's obesity

8  caused any particular limitation[6], he has failed to establish error in the ALJ's analysis.

9  **II.    Credibility**

10      The ALJ provided a number of reasons to discount Mr. Bowman's credibility, including

11  (1) inconsistent medical evidence, (2) evidence of conservative treatment, (3) gap in treatment,

12  (4) inconsistent daily activities, and (5) the reasons he stopped working. Tr. 25-27. Mr.

13  Bowman contends that none of these reasons is sufficiently clear and convincing.

14      As to inconsistent medical evidence, the ALJ cited a number of normal findings on

15  examination of Mr. Bowman's back. Tr. 25-26 (citing Tr. 327, 388, 393-94, 514-15, 524). He

16  also cited evidence that Mr. Bowman's cardiac conditions improved with treatment. Tr. 26 (Tr.

17  307-09, 381-82, 386-89, 514-15). Mr. Bowman argues that the ALJ ignored other evidence that

18  would support a finding of disability, such as a "mildly positive" straight leg test, a positive

19  bilateral Trendelenburg sign, imaging showing multilevel degenerative disk disease with

20  neurogenic claudication, and pain caused by flexion and extension of the spine. Dkt. 16 at 16-17

21  (citing AR 516, 527). Mr. Bowman has failed to show that any of those particular findings

---

22  [6] Curiously, Mr. Bowman argues that the limitations identified by Dr. Borish "arise from conditions such as obesity" (Dkt. 16 at 8), but Dr. Borish's opinion does not mention obesity.
23  Dr. Borish identified supraventricular tachycardia and lumbar back pain as Mr. Bowman's diagnoses. Tr. 530.

ORDER AFFIRMING THE COMMISSIONER - 5

1  undermine the evidence cited by the ALJ; the overall objective record supports the ALJ's

2  conclusion that Mr. Bowman's physical conditions were severe, but not disabling.

3        The ALJ also cited evidence that Mr. Bowman received conservative treatment as a basis

4  to discount his credibility.  Specifically, the ALJ cited evidence that one provider recommended

5  treating his back condition with epidural steroid injections, physical therapy, and water therapy.

6  Tr. 26 (citing Tr. 520).  Mr. Bowman notes that this provider indicated that if these treatments

7  are not successful, he could "discuss surgical treatments." *See* Tr. 520, 523.  The record does not

8  contain any progress notes post-October 2011 to indicate whether these non-surgical treatments

9  were successful, and whether surgery was eventually recommended. *See* Tr. 26.  The ALJ

10  reasonably concluded that this gap[7] in treatment for Mr. Bowman's back condition, coupled with

11  the conservative treatment recommendations, undermined the credibility of his complaints of a

12  disabling back condition.

13        Mr. Bowman also received treatment for his cardiac condition that somewhat controlled

14  his arrhythmias.  *See* Tr. 335 ("At this point, with his current treatment for hypertension and his

15  current medications, and some adjustment in his activity, his arrhythmias may be adequately

16  controlled on current medication.").  Although there is again some suggestion in the record that

17  if his arrhythmias returned, other treatments would be considered (Tr. 335), the record does not

18  show that escalating treatment was attempted. *See, e.g.* Tr. 515 (indicating that Mr. Bowman

19  still had some arrhythmia, but would continue on his present treatment and follow up in four

20  months).  Mr. Bowman's cardiologist's notes indicated that he found Mr. Bowman's conditions

21  to be stable enough to continue with the present course of treatment.  Tr. 333 ("Since [he] is a

---

22  [7] Mr. Bowman points to Dr. Borish's May 2012 opinion as evidence that he sought treatment after October 2011, but this opinion does not reference any particular recent treatment.  There are
23  no treatment notes post-dating October 2011 in the record, and thus the ALJ did not err in finding that Mr. Bowman had a gap in treatment.

ORDER AFFIRMING THE COMMISSIONER - 6

little better with medical therapy and not having sustained arrhythmias, it is acceptable for him to continue his current medical therapy and limit his activity like he is doing. He still will be able to explore ways to exercise and work on weight loss and address his back issues."). This level of treatment reasonably undermines Mr. Bowman's allegations of disability.

The ALJ also noted an inconsistency in Mr. Bowman's testimony regarding his abilities: he reported that he could complete household chores and cook on a daily basis, but testified that he can stand for only 15 minutes at one time. Tr. 27. Mr. Bowman also reported that he had recently moved (Tr. 307), which the ALJ interpreted to be inconsistent with his claims of debilitating limitations. Tr. 27. Mr. Bowman argues that he could have completed these activities in 15-minute bursts of activity, and thus his self-report was not actually inconsistent, but this alternative explanation does not establish that the ALJ's interpretation of the evidence was unreasonable.

Finally, the ALJ noted that Mr. Bowman reported that he stopped working because he was laid off, rather than because of his impairments, and that he planned to apply for unemployment benefits. Tr. 27 (citing Tr. 387). The ALJ construed this statement to mean that Mr. Bowman was capable of working at the time he was laid off, and that he would be looking for another job. Tr. 27. Mr. Bowman argues that the record shows that his conditions also interfered with his ability to work, and that he did not receive unemployment benefits after the first quarter of 2011, but this reasoning does not establish error in the ALJ's analysis. The ALJ reasonably concluded that the circumstances under which Mr. Bowman stopped working undermine his allegation of disability. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (affirming an ALJ's adverse credibility determination where, *inter alia*, "[claimant] stated at the administrative hearing and to at least one of his doctors that he left his job because he was

laid off, rather than because he was injured").

Because the ALJ provided multiple clear and convincing reasons to discount Mr. Bowman's credibility, the adverse credibility determination is affirmed.

**III.    Dr. Borish's Opinion**

Plaintiff's treating physician Dr. Borish completed a physical RFC questionnaire in May 2012.  Tr. 530-34.  The ALJ summarized this opinion and gave it "little to no weight" as follows:

> In May 2012 Dr. Borish opined that the claimant is limited to standing for ten minutes at a time and sitting for five minutes at a time.  He stated that the claimant is limited to sitting for two hours in an eight-hour day or standing and walking for two hours in an eight-hour day.  Dr. Borish further opined that the claimant would need four unscheduled breaks of 20 minutes each during the workday and must elevate his legs for 80 percent of each day.  Dr. Borish concluded that the claimant can rarely lift less than ten pounds and must use an assistive device.  The medical record, as discussed above, does not contain any support for these limitations.  Specifically, Dr. Borish's statements regarding the claimant's use of an assistive device, need to elevate legs, and restrictions on lifting and standing, walking or sitting are not consistent with objective findings or the observations of treatment providers.  Dr. Borish's obliging fill in the attorney-generated blanks appears to be predicated on claimant's reports of his limitations, and is thus not an independent medical examination predicated on objective medical findings.  It chiefly references "back pain," while Dr. Borish is a cardiologist, and previously only ruled out claimant's past relevant work (albeit, unexplained) ([Tr. 336]).  A perusal of Dr. Borish's notes provides no hints of why he advocated a cane, or elevation of the legs.  Dr. Borish's physical examinations are essentially normal ([Tr. 339]).  There is no recommendation anywhere in Dr. Borish's notes that claimant become inactive, and no indication that he should lounge about 80% of the time with his legs elevated; necessarily there is no exaplanation what purpose would be served by such elevation.  I give Dr. Borish's opinions on this form little to no weight.

Tr. 29 (footnotes omitted).  Mr. Bowman argues that the ALJ's analysis is erroneous because (1) Dr. Borish is not a cardiologist, but a general practitioner; and (2) Dr. Borish's opinions are supported by treatment notes from Dr. Borish and other providers (whose notes Dr. Borish reviewed), and thus they are not based on Mr. Bowman's subjective reports.

The Commissioner concedes that the ALJ mistakenly believed Dr. Borish was a

1 cardiologist, when he is instead a general practitioner.  Dkt. 19 at 14 n.3.  But this error is
2 harmless because the ALJ also cited a valid reason to discount Dr. Borish's opinion: lack of
3 support in the medical record.  As the ALJ found, no treatment notes support the limitations Dr.
4 Borish identified in the questionnaire, namely Mr. Bowman's limits on lifting, sitting, standing,
5 and walking, and the need to elevate his legs and use an assistive device.  Mr. Bowman notes
6 that Dr. Borish was in a better position than a State agency medical consultant to opine as to his
7 limitations, which may be true, but Dr. Borish did not support his opinion with clinical findings
8 or reference to any findings or examinations.  This is a valid reason to discount Dr. Borish's
9 opinion.  *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept
10 the opinion of any physician, including a treating physician, if that opinion is brief, conclusory,
11 and inadequately supported by clinical findings.").

12 **IV.    Medical-Vocational Rule 202.11**

13 Mr. Bowman contends that the ALJ erred in relying on Medical-Vocational Rule 202.11
14 at step five, because the combination of his non-exertional limitations, specifically his anxiety-
15 and obesity-related limitations and the limitations noted by Dr. Borish, "erodes the job base in
16 such a manner that application of the Grids is inappropriate."  Dkt. 20 at 12.  But because, as
17 explained *supra*, the Court finds that the ALJ did not err in finding Mr. Bowman's anxiety
18 symptoms to be insignificant, in failing to account for unspecified obesity-related limitations, or
19 in discounting Dr. Borish's opinion, Mr. Bowman's argument as to Medical-Vocational Rule
20 202.11 fails.

21 //
22 //
23 //

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 21st day of April, 2014.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge